IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK04-83112-TJM |
| ) | A09-8015-TJM |
| JOHN PATRICK RAYNOR, ) | |
| ) | CH. 7 |
| Debtor(s). ) | |
| A & G PRECISION PARTS, an Oregon ) | |
| LLC; A & G PRECISION PARTS ) | |
| FINANCE, a South Dakota LLC; and ) | |
| DENNIS WALKER, individually and as a ) | |
| member of A & G Precision Parts and ) | |
| A & G Precision Parts Finance, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| JOHN RAYNOR, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Trial was held In Omaha, Nebraska, on June 26, 2012, regarding Fil. #27, Amended Motion for Contempt, filed by Defendant John Patrick Raynor, and Fil. #47, Amended Resistance, filed by Plaintiffs Dennis Walker, A & G Precision Parts, LLC and A & G Precision Parts Finance, LLC. Defendant John Raynor appeared pro se and Diana Vogt and James Sherrets appeared for the plaintiffs.

John P. Raynor, the debtor in the underlying Chapter 7 case and the defendant in this adversary proceeding, is an attorney and investor. In 2004, because of financial problems with one of his investments he filed a Chapter 11 case in this district. The bankruptcy case was converted to Chapter 7 and Mr. Raynor received a discharge of his pre-petition obligations in 2005.

One of the businesses he invested in was A & G Precision Parts and a related entity, A & G Precision Parts Finance. Both of these entities were limited liability companies and, initially, he was a member of the LLC. Five Points Bank in Grand Island, Nebraska, loaned funds to the companies and Mr. Raynor and other investors, including plaintiff Dennis Walker, signed a note to Five Points Bank on behalf of the LLC in their personal capacities. Mr. Raynor's obligation was discharged in the 2005 bankruptcy case.

The bankruptcy case is still not closed and the trustee/estate owns Mr. Raynor's interest in A & G.

In 2008, he signed a note to First State Bank which refinanced the Five Points Bank note. The note to First State Bank was eventually defaulted upon and First State Bank looked first to Mr. Walker for payment.

In 2009, Mr. Walker and the LLCs sued Mr. Raynor in the bankruptcy case in an attempt to set aside the discharge with regard to the obligation to Mr. Walker and the bank or, alternatively, for a finding that the discharge was not binding upon Mr. Walker because Mr. Walker was not listed as a creditor and did not receive official notice of the bankruptcy case. This court found that Mr. Walker had actual notice of the bankruptcy case and dismissed the adversary case, Adv. Proc. No. A09-8015.

First State Bank sued Mr. Walker on the note. Mr. Walker then settled with First State Bank and took over the lawsuit in state court. An amended complaint was filed naming Mr. Raynor which included not only Mr. Raynor's obligation on the First State Bank note, but other claims against Mr. Raynor which pre-dated his bankruptcy.

Mr. Raynor moved to reopen the adversary proceeding, A09-8015, for the purpose of bringing a contempt of court action for violating the discharge injunction. Mr. Walker, by counsel, resisted the reopening of the adversary proceeding and filed an affidavit alleging that the state court case did not deal with discharged debt.

After a hearing, the adversary proceeding was reopened and eventually Mr. Raynor filed a motion in the adversary proceeding requesting that the court find Mr. Walker, his attorney Diana Vogt, and the Sherrets law firm in contempt for their actions in state court violating the discharge injunction and their actions in the bankruptcy court by filing false affidavits. The court held a hearing on the motion on affidavit evidence. Mr. Walker's affidavit was admitted. It claimed Mr. Raynor had caused Mid City Bank to forward Mr. Walker's financial statement to First State Bank at the time of refinancing the Five Points Bank note, and that Mr. Raynor did so without the authority of Mr. Walker.

The motion contained the following assertions:

> Debtor and Mr. Walker each had a twenty percent ownership interest in A&G Precision Parts, LLC ("A&G") since March 1998. On February 5, 2009, A&G and its members were sued in a "State Court Action" on a business loan which was in default. On March 31, 2009, in the State Court Action, Mr. Walker cross-claimed against all other members, *other than* the Debtor,(Walker's Cross-Claim) asserting fraud which fraud is claimed to date back to March 1998 (the"Fraud Claim"). With respect to the Debtor, Mr. Walker initiated this adversary proceeding by filing a complaint on March 9, 2009 ("Walker's Discharge Complaint"), to set aside the Debtor's discharge ordered on October 5, 2005 ("Discharge Order"), so that he could also name the debtor as a defendant to his Fraud Claim in the Cross Claim. On July 1, 2009, this Court dismissed Walker's Discharge Complaint against the Debtor. On January 4, 2011, Mr. Walker amended his Cross-Claim ("FACC") following the law and honoring the statutory discharge of the Debtor and this Court's dismissal of the adversary proceeding, *i.e.*, Walker's Discharge Complaint, by continuing to exclude the Debtor from his cross-claim, *i.e.*, the Fraud Claim.
>
> When Walker amended his Cross-Claim in the State Court for a second time on July 18,2011 ("SACC"), Mr. Walker again included the Fraud Claim, but this time the complaint inexplicably added the Debtor as a named Defendant for the

>Fraud Claim. An excerpt from the SACC with the applicable pleadings is attached hereto as Exhibit 4. The Debtor followed up on August 22, 2011, by filing a Motion to Dismiss the Fraud Claim ("MTD") in the State Court Action premised upon the Discharge Order and 11 USC § 524. In response to Debtor's MTD, on September 29, 2011, Mr. Walker's counsel filed an opposition to Debtor's MTD ("MTD Opposition") in the State Court Action affirmatively arguing that the Discharge Order and statutory injunction do not discharge Debtor from liability for the Fraud Claim (the "Collateral Attack"). Mr. Walker's counsel of record in the State Court Action is the firm of Sherrets & Boecker LLC (the "Sherrets Firm"), and more specifically, Ms. Vogt of the Sherrets Firm. The Sherrets Firm and Ms. Vogt have represented Mr. Walker throughout all of the foregoing proceedings before this Court and in the State Court Action.
>
>The foregoing was negatively compounded by actions taken by Respondent Vogt of The Sherrets Firm in response to *Debtor's Motion To Reopen Adversary Proceeding*, Dkt. No. 19, filed 10/13/2011. Respondent Vogt filed an affidavit (DE 20-1, 11/30/2011) with this Court which can at best be described, in a light most favorable to Respondent Vogt, as materially misleading and, in a light least favorable to Respondent Vogt, as perjurious violating 18 USC §152(3) and 18 USC § 1621. Respondent Vogt's affidavit unequivocally asserts that the Fraud Claim against Debtor was unintentional, a misunderstanding, and a matter where a simple phone call from the Debtor would have resulted in a dismissal. The intent clearly reflected in Respondent Vogt's affidavit ignores the sequence of events where the Collateral Attack, as made in the MTD Opposition in the State Court Action, of this Court's Discharge Order took place only after the Debtor had filed a Motion to Dismiss the Fraud Claim (the "MTD") premised upon the Discharge Order. Debtor spoke to Respondent Vogt through filings in the State Court Action.
>
>Debtor seeks to enforce both the statutory injunction emanating from this Court's Discharge Order and gravamen of this Court's ruling in dismissing the Complaint. Additionally, Debtor seeks sanctions (i) against Walker and the Sherrets Firm for knowingly and intentionally violating this Court's Discharge Order by suing Debtor for Discharged Debts, (ii) against Walker and the Sherrets Firm for arguing in the State Court Action – after a finding was made by this Court that the Walker Discharge Complaint was time barred – that this Court's Discharge Order was not binding, and (iii) against Respondent Vogt for Respondent Vogt's most egregious conduct: that is, in an affidavit, knowingly and intentionally misrepresenting her intent to this Court when her conduct, the filing of [the] MTD Opposition contained a . . . Collateral Attack, belies her intent and proves otherwise ("Affidavit Incident"). Debtor suggests that the Affidavit Incident requires a referral pursuant to 18 USC § 3057(a) because the Affidavit violated 18 USC § 152(2) and 18 USC § 1621.

Mot. for Contempt (Fil. No. 27 at 2-4) (footnotes omitted).

The motion for contempt was taken under advisement and then Mr. Raynor requested a live testimony trial on the matter. Such request was granted. Just prior to the trial, Mr. Raynor filed a declaration which he planned to use at trial that asserted that Mr. Walker's affidavit concerning Mr. Raynor's actions in dealing with Mr. Walker's financial statement was a false affidavit.

Trial was held. The court ruled at the start of the evidence that Mr. Raynor's declaration would not be admitted and that he could testify about the facts asserted in the declaration.

Mr. Raynor called Mr. Walker to testify and Mr. Walker insisted he did not authorize Mr. Raynor to direct Mid City Bank to send the financial statement to First State Bank.

Mr. Raynor called Ms. Vogt and she admitted that the amended complaint in state court did include claims for pre-petition obligations. She testified that such inclusion was a mistake and that she did not realize for several months that the complaint contained pre-petition claims even though Mr. Raynor had complained about it in the state court and in the bankruptcy court. She testified that she left part of the drafting of the amended complaint to a new associate who had included the pre-petition claims. She further testified that she did not read the amended complaint before filing it. As soon as she realized what Mr. Raynor was talking about, she called him and apologized and promised to amend the offending sections. Mr. Raynor had already threatened contempt and upon receiving the apology from Ms. Vogt, he wanted to negotiate the dismissal of the state court action in return for dropping the contempt issues. She testified she refused to make such an arrangement which may have benefitted her but would have been harmful to her client.

She did not amend the state court complaint immediately upon realizing it contained pre-petition claims. She testified that she delayed amending it because the state court judge had certain matters under advisement that dealt with the complaint and she calculated that it would simply confuse things if a new amended complaint was filed prior to the state court judge making his ruling on pending matters. As soon as he made his rulings, she amended the complaint to take out the offending matters.

Although he requested the live testimony hearing and was instructed at the beginning of the hearing that his declaration would not be admitted and that he could testify concerning the facts surrounding the Walker financial statement, Mr. Raynor did not testify. As a result, there is no evidence in the record contrary to Mr. Walker's testimony concerning the transmission of the financial statement from Mid City Bank to First State Bank. There is no basis for a claim of contempt of court against Mr. Walker or Ms. Vogt based upon the Walker affidavit.

In her testimony, Ms. Vogt admitted the first amended complaint violated the discharge injunction. She also admitted that she filed one or more erroneous affidavits in the bankruptcy court before she recognized the drafting error in the complaint.

The discharge injunction of 11 U.S.C. § 524(a)(2) serves to ensure that after a debt is discharged, the debtor will not be pressured in any way to repay it. Everly v. 4745 Second Ave., Ltd. (In re Everly), 346 B.R. 791, 795 (B.A.P. 8th Cir. 2006) (citing legislative history). A willful violation of the § 524(a)(2) discharge injunction will warrant a finding of civil contempt and imposition of sanctions. In re Lang, 398 B.R. 1, 3 (Bankr. N.D. Iowa 2008) (citations omitted). The movant has the burden to show by clear and convincing evidence that the creditor had knowledge of the discharge and willfully violated it by pursuing collection activities. Id. Collection activities in violation of the injunction include "[a]ctions which, regardless of their superficial rationalization, are intended and actually work to extort payment of a discharged debt." Id. at 4 (citing cases of withholding college transcripts, criminal prosecution, refusing medical services, refusal to deal and termination of credit union membership).

I find as a fact that there was a violation of the discharge injunction and that one or more erroneous affidavits have been filed by Ms. Vogt. I further find that, at the time she filed the erroneous affidavits, she did not realize her statements were in error. I find that the inclusion of inaccurate statements was not intentional. I further find that Mr. Raynor has shown no evidence of harm, other than the expenditure of his time to bring the matters to Ms. Vogt's attention.

The failure to supervise an associate and read the final draft of the state court complaint before filing it and continuing failure to read it even after Mr. Raynor brought the pre-petition claims to her attention are serious mistakes by Ms. Vogt. However, viewed in light of the circumstances as explained by her under rigorous examination by Mr. Raynor, such mistakes are not in the nature of contempt of court.

IT IS ORDERED that the Amended Motion for Contempt, Fil. #27, is denied. This adversary proceeding is to be closed when the time for appeal has run.

DATED:    July 12, 2012

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
  Diana Vogt
  James Sherrets
  *John Raynor

Movant (*) is responsible for giving notice to other parties if required by rule or statute.